## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### GULFPORT DIVISION

| | | |
|---|---|---|
| In re | ) | |
| Condor Insurance Limited (In Official | ) | |
| Liquidation), | ) | |
| Debtor in a Foreign Proceeding. | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |
| | ) | |
| Richard Fogerty and William Tacon in their | ) | Case No.  1:08-cv-00639-LG-RHW |
| Capacity as the Joint Official Liquidators of | ) | |
| Condor Insurance Limited, | ) | |
| Plaintiffs. | ) | |
| v. | ) | |
| | ) | |
| Condor Guaranty, Inc. | ) | |
| Petroquest Resources, Inc., Harvey Milam, | ) | |
| Byron Tyghe Williams, Ross N. Fuller, | ) | |
| T. Alan Owen, Intercontinental | ) | |
| Development and Investment Corporation, | ) | |
| Gymnogyps Management, Inc., and | ) | |
| Finpac Holdings, Inc. | ) | |
| Defendants. | ) | |
| | ) | |

## APPELLANTS' BRIEF

| BAKER & McKENZIE LLP | BYRD & WISER |
|---|---|
| /s/ David W. Parham | /s/ Nicholas Van Wiser |
| David W. Parham | Nicholas Van Wiser |
| Texas State Bar No. 15459500 | State Bar No. 7339 |
| Laurie D. Babich | 145 Main Street |
| Texas State Bar No. 00796150 | Biloxi, MS  39530-4333 |
| 2001 Ross Avenue | Telephone:  (228) 432-8123 |
| 2300 Trammell Crow Center | Facsimile:  (228) 432-7029 |
| Dallas, Texas  75201 | |
| Telephone:  (214) 978-3000 | |
| Facsimile:  (214) 978-3099 | **LOCAL COUNSEL FOR CONDOR** |
| | **INSURANCE LIMITED, DEBTOR IN A** |
| | **FOREIGN PROCEEDING** |
| **ATTORNEYS FOR APPELLANTS** | |

# TABLE OF CONTENTS

I.     Statement of Basis of Appellate Jurisdiction........................................................1

II.    Issues Presented ....................................................................................................2

III.   Applicable Standard for Appellate Review ..........................................................2

IV.   Statement of the Case ..........................................................................................3

V.    Statement of Facts ................................................................................................8
        A.     The Nevis Proceeding and the Chapter 15 Case.......................................9
        B.     The Creation of CGI and the Transfers of Assets ..................................11
        C.     Nevis Law Causes of Action ..................................................................17

VI.   Summary of Argument .......................................................................................19

VII.  Argument And Authorities .................................................................................21
        A.     Jurisdiction—28 U.S.C. §1334 ..............................................................21
        B.     Chapter 15: Its Plain Language and Legislative History ........................23
        C.     Decisions Made Under the Former Section 304 Are Applicable ...........33
        D.     Commentator Views ...............................................................................39

VIII. Conclusion.........................................................................................................40

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abrams v. General Nutrition Companies, Inc.*, 2006 U.S. Dist. LEXIS 68574
(D.N.J. September 25, 2006) .................................................................................... 18

*Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1996) ........................................................... 3

*Barker v. King*, 2008 U.S. Dist. LEXIS 20421 (S.D. W.Va. March 13, 2008) ................ 18

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
374 B.R. 122 (Bankr. S.D.N.Y. 2007) ..................................................................... 35

*Carrieri v. Jobs.com Inc.*, 393 F.3d 508 (5th Cir. 2004) ........................................... 2

*Century Indemnity Co. v. National Gypsum Co. Settlement Trust (In re National
Gypsum Co.)*, 208 F.3d 498 (5th 2000) ..................................................................... 2

*Cummings v. United States*, 648 F.2d 289 (5th Cir. 1981) ........................................ 3

*In re French*, 440 F.3d 145 (4th Cir. 2006) ...................................................... 30, 33

*Grochinski v. Knippen (In re Knippen)*, 355 B.R. 710 (Bankr. N.D. Ill. 2006) .......... 22, 23

*In re Hideki Kojima*, 177 B.R. 696 (Bankr. D. Co. 1995) ..................................... 24, 26,
32

*Higgins v. Higgins (In re Pacor)*, 743 F.2d 984 (3rd Cir. 1984) ................................ 17

*Iida v. Kitahara (In re Iida)*, 377 B.R. 243 (B.A.P. 9th Cir. 2007) .............................. 30

*Lane v. Halliburton*, 529 F.3d 548 (5th Cir. 2008) .................................................... 2

*In re Loy*, 2008 Bankr. LEXIS 1038 (Bankr. E.D. Va. 2008) .................................... 33

*In re Maxwell Committee Corp.*, 170 B.R. 800 (Bankr. S.D.N.Y. 1994) ................. 24, 25,
26

*In re Metzeler*, 78 B.R. 674 (Bankr. S.D.N.Y. 1987) ................................ 24, 26, 30, 31,
32, 33

*Paterson v. Weinberger*, 644 F.2d 521 (5th Cir. 1981) ......................................... 2, 4

*In re SPhinX, Ltd.*, 351 B.R. 103 (Bankr. S.D.N.Y. 2006) ......................................... 29

*In re Tarricone*, 80 B.R. 21 (Bankr. S.D.N.Y. 1988) ................................... 24, 26, 31, 32

i

*The Cadle Co. v. Pratt (In re Jack Pratt, Jr)*, 524 F.3d 580 (5th Cir. 2008).......................2

*Toth v. Bodyonics, Ltd.*, 2007 U.S. Dist. LEXIS 18278 (E.D. Pa. March 15, 2007).........18

*In re Treco*, 240 F.3d 148 (2nd Cir. 2001) ..................................................................30

*In re Tri-Continental Exch. Ltd.*, 349 B.R. 627 (Bankr. E.D. Cal. 2006) ........................17

*United States v. Ron Pair Enterprises*, 489 U.S. 235 (1989) .............................................22

*In re Webb*, 954 F.2d 1102 (5th Cir. 1992) ..................................................................2

*Wood v. Wood (In re Wood)*, 825 F.2d 90 (5th Cir. 1987) ...............................................17

## FEDERAL STATUTES

11 U.S.C. § 101(23) ........................................................................................................1

11 U.S.C. § 101(24) ........................................................................................................2

11 U.S.C. § 109(b) & (d) ................................................................................................3

11 U.S.C. § 304(repealed) .......................................................2, 4, 16, 24, 29, 30, 31, 32

11 U.S.C. § 544 (b) ......................................................................................................22

11 U.S.C. § 547 ...........................................................................................................25

11 U.S.C. § 529 ....................................................................................................23, 33

11 U.S.C. §544(b) ........................................................................................................22

11 U.S.C. §1501(a) .................................................................................................4, 20

11 U.S.C. § 1502(4) .......................................................................................................1

11 U.S.C. §1507(a) .........................................................................................27, 28, 29, 30

11 U.S.C. §1509(b)(1) ..................................................................................................28

11 U.S.C. § 1520(a) ......................................................................................................23

11 U.S.C. §§ 1521(a)(7) ..............................................2, 3, 4, 15, 16, 19
                                                    20, 22, 23, 25, 28, 33

11 U.S.C. § 1523 ..............................................................................................26

11 U.S.C. §§ 1525(a) ........................................................................................27

11 U.S.C. §§ 522, 544, 545, 547, 548, 550, 553 ...............................................2

28 U.S.C. §151 ................................................................................................17

28 U.S.C. § 158 (a)(1) .......................................................................................1

28 U.S.C. § 1334 ................................................................................3, 4, 15, 17, 18, 19

Fed. R. Civ. P. 12(b)(1) ..............................................................................2, 3, 4

Fed. R. Bank. P. 7001 .......................................................................................33

Fed. R. Bank. P. 8002 ........................................................................................2

Fed. R. Bankr. P. 8001(a) ..............................................................................1, 2

## LEGISLATIVE HISTORY

H.R. Rep. No. 109-31, 109th Cong., 1st Sess. 106, Section 1508 (2005)...................4, 26

H.R. Rep. No. 109-31, 109th Cong., 1st Sess. 106, Section 1507 (2005)........................29

H.R. Rep. No. 190-31, 109th Cong., 1st Sess. 106 at n. 117 (2005)................................30

## FOREIGN LAW

United Nations Commission on International Law, Model Law on Cross-Border
   Insolvency with Guide to Enactment, Article 21(1) ................................................25

United Nations Commission on International Law, Model Law on Cross-Border
   Insolvency with Guide to Enactment, Article 23   ................................................26

United Nations Commission on International Law, Model Law on Cross-Border
   Insolvency with Guide to Enactment, para. 14 ........................................................14

*Barlow Clowes v Eurotrust*..................................................................................15

*Bank of Credit and Commerce International (Overseas) Ltd. v. Akindele*, [2000] 4
   All ER 221 ..........................................................................................................14

*Lonrho Ltd v. Shell Petroleum Ltd* [1980] 1 WLR 627 at 634...........................................14

iii

*Twyne's Case*, 76 Eng. Rep. 809 (Star Chamber 1601)......................................15

*Walker v. Wimborne* (1976) 50 ALJR 446 .......................................................14

## LAW REVIEW AND ARTICLES

*As Certain as Debt and Taxes:Estate Planning, Asset Protection Trusts and*
*Conflicting State Law*, S.C. 60  A.L.I -A.B.A. 179 (1998) ...................................15, 25

Jay Lawrence Westbrook, *Choice of Avoidance Law in Global Insolvencies*, 17
Brook. J. Int'l L. 499 (1991) ......................................................................................27

Jay Lawrence Westbrook, *Avoidance of Pre-Bankruptcy Transactions in*
*Multinational Cases*, 42 Tex. Int'l L.J. 899, 903 (2007) .............................................27

Jay Lawrence Westbrook, *Chapter 15 At Last*, 79 Am. Bankr. 713, 716 (2005)..............30

Jeremy V. Richards, Application of Avoidance Laws to Cross-Border
Transactions----*A Patchwork Quilt of Confusion*, 5 Int'l Insol. Rev. 109, 117
(1996).........................................................................................................................32

Lee, Paul L., Ancillary Proceedings Under Section 304 and Proposed Chapter 15
of the *Bankruptcy Code,* 76 Am. Bankr. L.J. 115, 149-158 (2002) ...........................24

R.A. Gitlin and E.D. Flaschen, *The International Void in the Law of*
*Multinational Bankruptcies*, 42 Bus. Lawyer 307, 319 (1987)..................................31

**TO THE HONORABLE LOUIS GUIROLA, UNITED STATES DISTRICT JUDGE:**

Richard Fogerty and William Tacon ("Appellants" or "Foreign Representatives") as the Joint Official Liquidators and Foreign Representatives of Condor Insurance Limited ("CIL" or the "Debtor") respectfully submit this Appellants' Brief in support of their appeal from the following orders entered by the Honorable Edward R. Gaines of the United States Bankruptcy Court for the Southern District of Mississippi (the "Bankruptcy Court"): (1) the Order entered on July 17, 2008 granting Condor Guaranty, Inc.'s motion to dismiss [Dkt #158 in Adversary No. 07-5049]; (2) the Order Addressing Additional Motions to Dismiss and Pleadings entered on July 24, 2008 [Dkt #161 in Adversary No. 07-5049]; and (3) the Final Judgment Dismissing Adversary Proceeding entered on July 24, 2008 [Dkt #162 in Adversary No. 07-5049] (collectively, the "Dismissal Orders"). The Dismissal Orders resulted in the complete dismissal of Appellants' Original Complaint and Amended Complaint (collectively, the "Complaint") as against all defendants in Adversary No. 07-5049.

The Appellees in this case are Condor Guaranty, Inc. ("CGI"), Petroquest Resources, Inc. ("Petroquest"), Harvey Milam ("Milam"), Byron Tyghe Williams ("Williams"), Ross N. Fuller ("Fuller"), T. Alan Owen ("Owen"), Intercontinental Development and Investment Corporation ("IDIC"), Gymnogyps Management, Inc. ("Gymnogyps") and Finpac Holdings, Inc. ("Finpac").

In support of this appeal, Appellants would respectfully show as follows:

## I.    STATEMENT OF BASIS OF APPELLATE JURISDICTION

The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158 (a)(1) and FED. R. BANKR. P. 8001(a), which provides that a party may take an appeal as of right from a final judgment, order, or decree of a bankruptcy judge to a district court upon the timely filing of a notice of appeal. The Dismissal Orders are final orders within the meaning of 28 U.S.C. §

158(a)(1).  Appellants timely filed this Notice of Appeal of the each of the Dismissal Orders on July 25, 2008, pursuant to Fed. R. Bank. P. 8002.

## II.   ISSUES PRESENTED

1.      Whether the Bankruptcy Court erred as a matter of law by concluding that it lacked subject matter jurisdiction over the Appellants' Complaint?

2.      Whether the Bankruptcy Court erred as a matter of law by interpreting 11 U.S.C. §§ 1521(a)(7) and 1523 to mean that a foreign representative cannot bring an avoidance action that is not based on 11 U.S.C. §§ 522, 544, 545, 547, 548, 550, 553 or 724(a) without first filing a case under Chapter 7 or Chapter 11?

## III.   APPLICABLE STANDARD FOR APPELLATE REVIEW

This Court functions as an appellate court when reviewing the Bankruptcy Court's decision.[1]  Thus, the same standards of review which apply generally to federal court of appeals also apply to this Court.[2]  A bankruptcy court's findings of fact are reviewed for clear error; its conclusions of law are reviewed *de novo*.[3]  The Dismissal Orders are based exclusively on conclusions of law; therefore, all of the issues in this appeal are subject to *de novo* review.[4]

The Bankruptcy Court entered the Dismissal Orders upon motions to dismiss filed under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[5]  The motion to dismiss presented under Fed. R. Civ. P. 12(b)(1) was a facial attack on subject matter jurisdiction, which alleged that the Bankruptcy Court did not have subject matter jurisdiction as a matter of law, even after accepting the

---

[1] *In re Webb*, 954 F.2d 1102, 1103-04 (5th Cir. 1992).
[2] *Id.*
[3] FED. R. BANKR. P. 8013; The Cadle Co. v. Pratt (In re Jack Pratt, Jr), 524 F.3d 580, 584 (5th Cir. 2008); Carrieri v. Jobs.com Inc., 393 F.3d 508, 517 (5th Cir. 2004); Century Indem. Co. v. Nat'l Gypsum Co. Settlement Trust (In re Nat'l Gypsum Co.), 208 F. 3d 498, 504 (5th 2000).
[4] *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008); *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).
[5] Adversary Docket ("AD") #25, #137, #142 and #143.

Appellants' allegations as true and construing them in a light favorable to the Appellants.[6]   In

light of its decision on the Fed. R. Civ. P. 12(b)(1) motion, the Bankruptcy Court did not reach

the Fed. R. Civ. P. 12(b)(6) motion, which also required accepting the Appellants' allegations as

true and in a light most favorable to the Appellants.[7]   Because the Bankruptcy Court's decisions

were made accepting the Appellants' factual allegations as true, there was no evidence, aside

from that alleged and included with the Complaint, presented at the hearing.   Consequently, the

record citations contained herein are in many instances citations to the allegations made, rather

than to evidence considered.   This brief contains records citations to both the Adversary

Proceeding No. 07-5049 and the Main Bankruptcy Case No. 07-51045-ERG.   Citations to the

Adversary Proceeding docket will be indicated by "AD," and citations to the Main Bankruptcy

Case docket will be indicated by "MCD."

### IV.   STATEMENT OF THE CASE

This appeal concerns the Bankruptcy Court's interpretation of its subject matter

jurisdiction over a lawsuit asserting the Debtor's claims against the Defendants and filed within

the context of the Debtor's pending case under Chapter 15 ("Chapter 15") of Title 11 of the

United States Code (the "Bankruptcy Code").  The Bankruptcy Court erred as a matter of law in

concluding that it did not have subject matter jurisdiction over the Complaint and in its

interpretation and application of Sections 1521(a)(7) and 1523 of the Bankruptcy Code.

The Bankruptcy Court has jurisdiction over the Complaint pursuant to 28 U.S.C. § 1334,

and an exercise of such jurisdiction is allowed, contemplated, and even encouraged, by the plain

language of Chapter 15 and its legislative history. Adjudication of the Appellants' Complaint by

the Bankruptcy Court serves one of the fundamental purposes of Chapter 15, which was enacted

---

[6] AD # 113, pp. 3-4. *Cummings v. United States*, 648 F.2d 289, 291 (5th Cir. 1981).
[7] *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

in 2005 to implement the Model Law on Cross-Border Insolvency (the "Model Law") formulated by the United Nations Commission on International Trade Law ("UNCITRAL") to promote, among other things, cooperation between insolvency courts in various international jurisdictions.[8]  Along with the Model Law, UNCITRAL published the Guide to Enactment of the UNCITRAL Model Law on Cross-Border Insolvency (the "Guide") to assist countries with the process of adopting and implementing the Model Law into their respective legislation.[9]   The Guide explains some of the background and purposes behind the Model Law and is persuasive in the application of Chapter 15.[10]   The following two passages are especially meaningful in this case:

> 14.     Fraud by insolvent debtors, in particular by concealing assets or transferring them to foreign jurisdictions, is an increasing problem, in terms of both its frequency and its magnitude.  The modern, interconnected world makes such fraud easier to conceive and carry out.   The cross-border cooperation mechanisms established by the Model Law are designed to confront such international fraud.
>
> * * *
>
> 17.     To the extent there is a lack of communication and coordination among the courts and administrators from concerned jurisdictions, it is more likely that assets would be dissipated, fraudulently concealed, ...[11]

The situation described above, which was intended to be avoided by this legislation, is precisely the basis for the Complaint.  As further described below, all of the Defendants worked together with the intent to defraud the Debtor and its creditors and to move the Debtor's assets outside the reach of its creditors for the Defendants' own benefit.  The Appellants brought this

---

[8] 11 U.S.C. §1501(a); www.uncitral.org/uncitral/en/uncitral_texts/insolvency/1997Model.html.
[9]  www.uncitral.org/uncitral/en/uncitral_texts/insolvency/1997Model.html.
[10] H.R. Rep. No. 109-31, 109th Cong., 1st Sess. 106, Section 1508 (2005).
[11] Guide, paras. 14 and 17.

suit in the Bankruptcy Court, because they need the Bankruptcy Court's cooperation and assistance to recover assets for the Debtor and its creditors.

CIL is a Nevis corporation that formerly operated an insurance and surety bond business. In September 2006, a creditor of CIL sought permission from the High Court of Nevis (the "Nevis Court") to initiate a winding up proceeding against CIL.[12]  On November 24, 2006, that application was granted, and, on November 27, 2006, the creditor presented its winding up petition. On May 18, 2007, the Nevis Court granted the winding up petition, ordered that CIL be wound up under section 377 of the Nevis Companies Ordinance 1999 and appointed the Appellants as the Joint Official Liquidators of CIL with the power to investigate CIL's assets and to take them into their control for the benefit of CIL's creditors (the "Foreign Proceeding").

In their initial investigation of CIL's assets, the Appellants learned that most (if not all) of CIL's assets had been recently transferred to related entities.  Moreover, most (if not all) of those assets appeared to be located in the United States.  The Appellants also learned that most (if not all) of the parties involved in the transfers of CIL's assets were located in the United States.  In order to gain a United States court's assistance with control of CIL's assets and claims within the United States and with obtaining information related to such assets and claims, the Appellants filed a Chapter 15 petition in the Bankruptcy Court and sought recognition of the Foreign Proceeding as a "foreign main proceeding."[13]  On August 21, 2007, the Bankruptcy Court granted the Chapter 15 petition and recognized the Foreign Proceeding as a foreign main

---

[12] A winding up under Nevis law is similar to an involuntary Chapter 7 bankruptcy under U.S. law, in that a creditor or creditors can petition the court to place a debtor under the control of a trustee's supervision for the purpose of reorganization or liquidation of a debtor for the benefit of creditors.

[13] Section 1502(4) of the Bankruptcy Code defines a "foreign main proceeding" as "a foreign proceeding pending in the country where the debtor has the center of its main interests."  Section 101(23) of the Bankruptcy Code defines "foreign proceeding" as "a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law related to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation."

proceeding, entrusted the Appellants[14] with the administration, realization and distribution of the Debtor's assets within the United States, and allowed the Appellants to conduct discovery regarding the Debtor's assets, affairs, rights, obligations or liabilities.

On November 20, 2007, Appellants filed their Original Complaint in Adversary No. 07-5049 and began their formal discovery shortly thereafter. Discovery is ongoing in the Chapter 15 case and was on-going in Adversary No. 07-5049 until entry of the Dismissal Orders. The Original Complaint sought to recover various CIL assets (or damages for their value) that were transferred in violation of Nevis law. In particular, Appellants sought to recover under the following causes of action: (a) knowing receipt of property transferred in violation of fiduciary duty under Nevis law; (b) dishonest assistance in transferring property in violation of fiduciary duty under Nevis law; (c) for avoidance of transfers intended to delay, hinder or defraud creditors under the Statute of Elizabeth 1571; and (d) for return of assets transferred after the commencement of the winding up proceeding (November 27, 2006), which transfers are void under Nevis law.

CGI filed a motion to dismiss the Original Complaint on December 21, 2007, and Appellants responded on January 2, 2008. The parties agreed to a briefing schedule that was approved by the Bankruptcy Court on February 7, 2008, and which required the parties to brief the following issues:[15] (a) whether the Bankruptcy Court had subject matter jurisdiction over the Nevis law causes of action asserted by the Appellants in the adversary proceeding; and (b) if the Bankruptcy Court did not have subject matter jurisdiction, whether the Appellants had stated claims upon which relief could be granted against the Defendants under Nevis law.

---

[14] The Appellants are the foreign representatives of the Foreign Proceeding. Section 101(24) of the Bankruptcy Code defines "foreign representative" as "a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding."

[15] AD # 101. All other issues raised by the motion to dismiss were either resolved or reserved.

Appellants filed the Amended Complaint on April 21, 2008, which added new defendants, but which contained the same causes of action. CGI filed a motion to dismiss the Amended Complaint on June 9, 2008. Appellants filed a response to CGI's motion to dismiss the Amended Complaint on June 11, 2008. Harvey Milam ("Milam") and Gymnogyps Management, Inc. ("Gymnogyps") also filed motions to dismiss the Amended Complaint on June 16, 2008. The motions to dismiss the Original Complaint and the Amended Complaint filed by CGI, the motion to dismiss the Amended Complaint filed by Milam and the motion to dismiss the Amended Complaint filed by Gymnogyps are referred to collectively herein as the "Motions to Dismiss."

On June 18, 2008, the Bankruptcy Court held a hearing on the Motions to Dismiss and heard arguments from Appellants, CGI, Milam and Gymnogyps. The Bankruptcy Court entered the Dismissal Orders on July 17, 2008 and July 24, 2008, adopting CGI's reasoning and concluding that the Bankruptcy Court did not have subject matter jurisdiction over the Complaint and Amended Complaint. In its July 17, 2008 Opinion, the Bankruptcy Court based its decision regarding subject matter jurisdiction on the following: (a) Section 1521(a)(7) prohibits a bankruptcy court from authorizing foreign representatives to file actions to avoid prepetition transfers;[16] (b) foreign representatives in Chapter 15 case only have standing to exercise avoidance powers if they initiate a companion Chapter 7 or 11 case; (c) rather than merely seeking assistance from the Bankruptcy Court, the Appellants have improperly asked the Bankruptcy Court to be a *de facto* Nevis court; (d) avoidance actions are available to the Appellants if they file a case under Chapter 7 or 11;[17] and (e) the Appellants failed to cite Chapter 15 decisions to show that foreign avoidance law can be used where United States

---

[16] This ruling was in spite of the fact that Appellants alleged that many, if not all, of the transfers were made after the winding up petition was file and are, therefore, void under Nevis law. AD# 115, pp. 12-14 and p. 19.

[17] CIL cannot file a Chapter 7 or 11 case, because it is a foreign insurance company. See, 11 U.S.C. § 109(b) & (d).

avoidance law cannot be used, and that Appellants improperly relied on the decisions under the former Section 304 of the Bankruptcy Code. Based on its conclusion that it did not have subject matter jurisdiction, the Bankruptcy Court dismissed the Complaint under Fed. R. Civ. P. 12(b)(1) and did not address the Fed. R. Civ. P. 12(b)(6) issues raised in the Motions to Dismiss.

As further explained below, Appellants believe that the Bankruptcy Court erred as a matter of law in its decision, because, among other things, the Bankruptcy Court did not consider the basis of all bankruptcy court jurisdiction, 28 U.S.C. §1334, and misinterpreted Chapter 15. In particular, the Bankruptcy Court failed to consider applicable authority under the former Section 304, failed to properly construe Chapter 15 and its purposes of preventing fraudulent transfers and promoting equal treatment of creditors, did not follow the plain language of Section 1521(a)(7) of the Bankruptcy Code. Section 1521(a)(7) does not preclude a Bankruptcy Court's consideration of any claim that looks like an avoidance action; rather, it essentially codifies the trend that was developing prior to Chapter 15 of allowing foreign representative to use the law of their home court to avoid transfers, but not to use United States' avoidance actions based on the Bankruptcy Code.

## V.    STATEMENT OF FACTS

The Bankruptcy Court based its Dismissal Orders on a purely legal decision in response to motions that required the Bankruptcy Court to accept all of the Appellants' factual allegations as true and to construe them in a light favorable to the Appellants. This Court must review those decisions *de novo* and must also accept the factual allegations as true.[18]   Accordingly, many of the record citations for this statement of facts are derived from the Appellants' allegations in the proceedings below.

---

[18] *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

**APPELLANT'S BRIEF**                              - 8 -
DALDMS/649490.1

CIL is a Nevis corporation organized under the laws of St. Christopher and Nevis.[19] CIL is no longer operating, but was primarily involved in the reinsurance business and issued special types of financial guarantees and surety bonds.[20] Prior to its winding up proceeding in Nevis, CIL boasted significant assets in its financial statements.[21] By the time the Appellants took over the CIL estate pursuant to the Nevis Court's orders, those assets were gone.[22] For the benefit of CIL's creditors, who are located in various countries, Appellants have sought to recover those assets, or the value thereof, under the Nevis law causes of action described herein.[23] Appellants believe that the Bankruptcy Court has subject matter jurisdiction over those causes of action and that such causes of action are supported by the facts recited herein and in the Complaint.

A.    **The Nevis Proceeding and the Chapter 15 Case**

During 2005 and 2006, CIL was the subject of multiple creditor lawsuits and collection efforts, and its ability to continue in business was questionable.[24] On September 11, 2006, Infineon, a judgment creditor of CIL, sought permission from the Nevis Court to present a winding up petition against CIL.[25] The Nevis Court granted Infineon permission on November 24, 2006.[26]

On November 27, 2006, Infineon presented a winding up petition against Condor in the Nevis Court.[27] As of November 27, 2006, in addition to Infineon's outstanding judgment against CIL of EUR 1,567,768.14 plus GBP 15,000, CIL had many other judgment creditors, including but not limited to, the following persons or entities: (a) DDD LLC and Zebra Technologies

---

[19] AD # 115, p.6.
[20] AD # 115, p.6.
[21] AD # 115, p.10-11 and Exhibit B.
[22] AD # 115, p.6, 12-14.
[23] AD # 115, p. 21.
[24] AD # 115, p. 6-7.
[25] AD # 115, p. 7.
[26] AD # 115, p. 7.
[27] AD # 115, p. 7.

Europe Ltd. (awarded a judgment of EUR 11,244,460.01 on January 19, 2006); (b) William R. Moody and Stanley L. Miller (awarded a judgment of USD 2,700,000 on February 20, 2006); (c) AVX Ltd (awarded a judgment of EUR 601,274.17 on February 17, 2006); (d) Vicor Corporation (awarded a judgment of USD 292,766.94 on March 17, 2006); (e) VIL Holdings Ltd (awarded a judgment of GBP 95,078.89 on September 11, 2006); (f) Stafford Holdings Ltd (awarded a judgment of GBP 95,078.89 on September 11, 2006); and (g) Charles Skinner (awarded a judgment of GBP 185,314.02 on September 11, 2006).[28]   In addition to these judgment creditors, CIL was the subject of other pending litigation by its insured and creditors.[29]

On May 18, 2007, the Honorable Justice Leigertwood-Octave of the Nevis Court ordered that Condor be wound up by the Nevis Court under section 377 of the Companies Ordinance 1999, which Order was amended on April 11, 2008, (the "Winding-up Order").[30]   The Nevis Court appointed the Appellants as the joint official liquidators of CIL, and empowered them to investigate CIL's assets and to take all such assets into their custody for the benefit of CIL's creditors.[31]

On July 26, 2007, the Foreign Representatives filed a Chapter 15 petition commencing a Chapter 15 case ancillary to the Foreign Proceeding and seeking recognition of the Foreign Proceeding as a foreign main proceeding.[32]   On August 21, 2007, the Bankruptcy Court entered an Order recognizing the Foreign Proceeding as a foreign main proceeding, entrusting the Foreign Representatives with the administration, realization and distribution of CIL's assets

---

[28] AD # 115, p. 7.
[29] AD # 115, p. 7.
[30] MCD # 2, Exhibit B.
[31] MCD # 2, Exhibit B.
[32] MCD # 1 and 2.

**APPELLANT'S BRIEF**                                        - 10 -
DALDMS/649490.1

within the United States, and allowing the Foreign Representatives to conduct discovery.[33] Appellants began conducting discovery of parties and witness in December of 2007.[34]

**B.      The Creation of CGI and the Transfers of Assets**

At all relevant times, Harvey Milam has acted as president of CIL.[35]  Some of its other officers, directors and employees included: Byron Tyghe Williams ("Williams"), as Preferred Shareholder Liaison; Joycelyn Milam as Vice-President; Albert Milam as Vice-President, Hope Milam in communications; Brad Cates as Chief Financial Officer; Daniel MacMullin as director; and Tracy Brandy as office manager.[36]  Ross N. Fuller ("Fuller") and or Stockton Fuller & Company, Inc. ("Stockton Fuller") acted as a consultant and/or broker to CIL.[37]  T. Alan Owen ("Owen") acted as CIL's counsel.[38]  Intercontinental Development and Investment Corporation ("IDIC") was, purportedly, a secured creditor of CIL.[39]  This list is strikingly similar to the list of officers, directors and employees for CGI.[40]

Milam is also the President of CGI.[41]  Its other officers, directors and employees include: Albert Milam as Vice President; Brad Cates as Secretary and Treasurer; John P. Lindsay as Secretary; Hope Alexis Milam as Director; Tracy Brandy as Director; Daniel MacMullin as Director; and Williams as Asset Manager.[42]  Fuller and/or Stockton Fuller appear to fulfill the role of consultant and/or broker as to CGI also.[43]  Likewise, Owen has acted as counsel for CGI

---

[33] MCD # 35.
[34] AD # 9-21, 42-47, 59, 61, 67-70.
[35] AD # 115, p. 8.
[36] AD # 115, p. 8.
[37] AD # 115, p. 8.
[38] AD # 115, p. 8.
[39] AD # 115, p. 8.
[40] AD # 115, p. 8.
[41] AD # 115, p. 9.
[42] AD # 115, p. 9.
[43] AD # 115, p. 9.

and, upon information and belief, has also acted as counsel for Petroquest and IDIC.[44]  IDIC is also a purported secured creditor of CGI.[45]

As described above, various creditors were pursuing CIL through 2005 and 2006, with many obtaining judgments against CIL in 2006.[46]  This resulted in the September 11, 2006 petition by Infineon seeking permission to wind up CIL.[47]  Pending the hearing on that motion, the work to move CIL's assets commenced.[48]

### 1.    *Setting Up the New Entity*

The first step of the plan was to set up a new entity, CGI, as a member of a Bahamian Friendly Society.[49]  On October 10, 2006, Milam sent correspondence to Fuller saying:

> "now that your Am Ex bill is taken care of let's look at how to do the Bahama society deal. I need an atty to issue us a legal opinion if your guy does not already have one, that this society is legal and how we merge Condor into it in such a way as to be able to get it back out. I have until the first on [sic] November if all else fails here. I would guess that this 'sale' would also give me 90 days breathing room concerning the claims issue as well. We could send out notices of the sale to all the creditors etc. and really confuse the heck out of them. By then the SLS system will be up and running, and it will be time to buy a boat."[50]

There are many subsequent e-mails between Fuller and Milam through October 2006 and November 2006 about the Friendly Society and getting a new Condor entity established.[51]  It appears that Fuller introduced the idea to Milam, that he made the introductions between Milam

---

[44] AD # 115, p. 9.

[45] AD # 115, p. 9.

[46] AD # 115, p. 7 and 9.

[47] AD # 115, p. 7 and 9.

[48] AD # 115, p. 9 - 14.

[49] A Friendly Society is an association of members and can include various business entities. It appears that those businesses can offer services only to members of the Friendly Society. A business that offers insurance within a Friendly Society is apparently not subject to insurance regulations because the service can only be offered to members. It appears that Condor Guaranty has been able to avoid insurance regulators with this maneuver, by simply having all of its insureds become members of the Friendly Society. AD #115, p. 9.

[50] AD # 115, p. 9 and Exhibit A.

[51] AD # 115, p. 9.

and the Friendly Society leaders, and that he assisted with setting up the new entity to receive CIL's assets and business.[52]

On November 8, 2006, CGI was incorporated in the Bahamas.[53]  On November 15, 2006, the Professional Benefits Association ("PBA"), a Bahamian Friendly Society, granted a charter to CGI and other related companies.[54]

### 2.    *Dividing The Assets*

The next step in the plan was preparing to move the assets.[55]  According to its 2005 audited balance sheet, CIL had over $313 million in assets.[56]  Of that amount, the financial statement noted that approximately $304 million consisted of holdings in U.S. based companies and securities publicly traded on U.S. exchanges.[57]

According to CIL correspondence from late October 2006 and the company's financial statements, these assets included the following:   (a) $107,843.47 in computer and office equipment; (b) $548,218.79 in assets owned by Aegis Shipping Limited (tools, tractors, cars, paintings and sculptures); (c) $158,975 in rolling stock; (d) $1,040,500 in real estate; (e) $2,540,797.00 in cash and bank accounts; (f) $6,983,241 in premiums for insurance and reinsurance contracts earned but not collected; (g) $51,125,731.18 investment in oil and gas properties, which is further described as 100% of the working interest in 55 gas and oil wells, equipment and gathering system located in Pleasants and Ritchie County, West Virginia and 16 wells in Wood and Tyler Counties, West Virginia; (h) $15,000,000 investment in Petroquest International, Inc., which is further described as an ongoing investment for CIL's 30% share of

---

[52] AD #115, pp. 9-10.
[53] AD #115, p. 11.
[54] AD #115, p. 12.
[55] AD #115, p. 10.
[56] AD #115, p. 10 and Exhibit B.
[57] AD #115, p. 10.

rights of way and product from 4000 acres of land owned by Petroquest International, Inc. and Middle Island Creek; (i) $623,000 investment in Twin Fork Transportation, LLC, which is further described as a 49% interest in Twin Fork, a pipeline and gas gathering transportation company; (j) $224,887,500 in Petroquest preferred series C stock; (k) $10,000,000 in Global Link technology preferred issue; (l) $2,250,000 in Petroquest common shares (3,000,000 at 75 cents each); (m) $180,000 in Petroquest preferred B shares; and (n) $360,2500 in Petroquest preferred B shares.[58]   In other correspondence, additional assets are described, including a $5 million note receivable from Finpac, stocks held in an IFG Trust and shares in Ashby Corporation ("Ashby").[59]

These assets were held out to CIL's insureds, who are now its creditors, as assurance that CIL could pay claims under the policies it issued.[60]

In late October 2006, Milam and Williams corresponded about how to "divide" the above described assets between CIL and "a new surety company."[61]  Some of the assets that Williams agreed could be "divided" were the oil and gas assets described above.[62]  Mr. Fuller appears to have given his thoughts regarding capitalizing a new entity in this fashion.[63]

On November 10, 2006, Milam sent Williams an e-mail titled "Condor's set of problems", in which he described problems he was having with CIL.[64]  Due to the problems, Milam admitted that Condor didn't have the necessary cash flow to pay claims, further saying that:

---

[58] AD #115, pp. 10-11.
[59] AD #115, p. 11.
[60] AD #115, p. 2.
[61] AD #115, p. 11.
[62] AD #115, p. 11.
[63] AD #115, p. 11.
[64] AD #115, p. 11-12.

the claimants are going directly to winding up procedures instead of registering their judgments or filing suit in Nevis to enforce their judgments. There is a hearing on November 24 and written arguments due on 15 November, even if we lose on the 24th Jeffrey will appeal, but the damage will be done. *I suggest we make the move now. We can use the problems with the charter and the problem with the local registrar to justify the move and the problem with the charter to negotiate settlement. I will take a lot of heat and we will have to be prepared to fund the claims eventually...If we wait and lose the hearing and the appeal and then do not have money to pay the claims we lose the advantage of the positive spin for being the victim of the flawed system of Nevis.*" (emphasis added)[65]

### 3.  *The Transfer of Assets Commences*

CGI opened bank accounts at United Bank on November 15, 2006, and may have also opened accounts at other banks.[66] Upon information and belief, CIL's funds were transferred to CGI, either directly or indirectly, shortly after these accounts were opened and after November 27, 2006.[67]

On November 19, 2006, CGI purportedly executed an assignment of certain property to CGI, including: "Outstanding AR from New LTV; Outstanding AR from Gold Rock Creek; Petroquest restricted shares of stock totaling 3 million shares; Petroquest Series B Convertible Preferred Stock and a list of policies."[68]

On November 24, 2006, the Nevis Court granted permission for Infineon to file a winding up petition, and Infineon filed that petition on November 27, 2006.[69]

In December 2006, IDIC, Williams, Milam and Owen appear to have attempted to concoct a "foreclosure," which in fact was an assignment, of some of the oil and gas properties

---

[65] AD #115, p. 12.

[66] AD #115, p. 12.

[67] AD #115, p. 12 and 19.

[68] AD #115, p. 12 and Exhibit E.

[69] AD #115, p. 12.

described above.[70]   The documents are dated to appear as though this occurred in early November 2006, but the public records of transfer and the correspondence between these parties demonstrates that it happened in December 2006, after the winding up petition was filed.[71]

As part of the concocted "foreclosure," in December 2006, CIL assigned IDIC 22 wells in Pleasants, Ritchie and Tyler Counties West Virginia that were subject to an unrecorded deed of trust lien allegedly[72] granted by CIL in favor of IDIC in 2005.[73]   Milam consented to a transfer of these interests in lieu of foreclosure, and they were immediately transferred to Milam's new company, CGI.[74]   At the same time, IDIC was also assigned 14 Wood County, West Virginia oil and gas interests and pipeline and rights of way in Vinton County, Ohio as part of CIL's agreement to transfer in lieu of foreclosure.[75]   Yet, there is no deed of trust granted by CIL in favor of IDIC with respect to those properties.[76]

These oil and gas interests were together worth millions of dollars according to the Defendants' own correspondence and documents, but Milam consented to a transfer in lieu of foreclosure when the purported debt allegedly secured by the properties was only $727,273.68.[77]

The Foreign Representatives are still attempting to determine whether the remaining oil and gas related assets, referenced above in the description of CIL's 2005 and 2006 asset lists and balance sheets, were in fact CIL's property, and, if so, the current ownership of those wells.[78]

---

[70] AD #115, p. 13.

[71] AD #115, p. 13.

[72] With all of the evidence of back-dating, the Plaintiffs do not concede that the security interest was granted or that it was granted as of the date shown.

[73] AD #115, p. 13.

[74] AD #115, p. 13.

[75] AD #115, p. 13.

[76] AD #115, p. 13.

[77] AD #115, p. 13.   The Foreign Representatives have been unable to determine whether the purported debt to IDIC was valid and/or enforceable and do not admit herein either that such amount was owed or that any wells were subject to a valid, enforceable security interest.

[78] AD #115, p. 13.

Upon being questioned by the Plaintiffs about the whereabouts of CIL's assets, Milam provided a "Portfolio Transfer (July-December)" (the "Portfolio Transfer"), and explained that virtually all of CIL's assets and business had been transferred to CGI.[79]

On or about January 17, 2007, after the date of presentation of the winding up petition in Nevis on November 27, 2006, Petroquest directed that the share certificate for 2,500,000 shares of Series C Preferred Stock in Petroquest that had been issued to CIL be cancelled and that the shares be returned to Treasury, with 2,000,000 shares of Preferred C Stock being simultaneously reissued to CGI.[80]    Additionally, according to the Portfolio Transfer, 3,000,000 shares of Petroquest common stock were apparently transferred to CGI.[81]  CIL also conveyed its holdings in Ashby to Finpac, but the timing of that transfer is unknown at this time.

The bulk of CIL's assets appear to have been transferred to CGI, with others going to Petroquest or Finpac.[82]    Still others may have gone to other persons or entities.  CGI has purported to assume some contingent liabilities of CIL, but it has by no means assumed all of CIL's liabilities.[83]  In fact, it appears that the "liabilities" assumed were not liabilities, but rather were insurance agreements on which no claims were pending, but premium was still owed.[84] The net effect of the transfers described above was to leave CIL with many claims and few assets to satisfy those claims.[85]

## C.    Nevis Law Causes of Action

The actions of the Defendants give rise to the Nevis causes of action described in the

---

[79] AD #115, pp. 13-14 and Exhibit F.
[80] AD #115, p. 14 and Exhibit G.
[81] AD #115, p. 14.
[82] AD #115, p. 14.
[83] AD #115, p. 14.
[84] AD #115, p. 14.
[85] AD #115, p. 14.

**APPELLANT'S BRIEF**                                              - 17 -
DALDMS/649490.1

Complaint.[86]   Accordingly, on November 20, 2007, the Appellants filed their Original Complaint against Petroquest and CGI, alleging Nevis law causes of action.[87]  On April, 21, 2008, after discovering the extent of the involvement of other parties, Appellants amended their Complaint to include all of the Defendants.[88]

The causes of action in the Complaint are not entirely foreign to U.S. courts, as they are similar to actions that exist under U.S. and various state laws.[89]  The actions are not, however, the kinds of avoidance actions available under Sections 522, 544, 545, 547, 548, 550, 553, and 724(a) of the Bankruptcy Code.  The Nevis law causes of action are more fully described in the Complaint and in the Affidavits of William Hare, but the elements are fairly basic.[90]

There are three essential elements of knowing receipt under Nevis law—a disposal of assets in breach of fiduciary duty, the beneficial receipt by the defendant of assets which are traceable as representing the assets of the plaintiff and knowledge on the part of the defendant that the assets received are traceable to a breach of fiduciary duty.[91]  When the company is either insolvent or on the verge of insolvency, the directors and officers have duties to the company as a whole and must consider the creditors' interests.[92]  In the context of a liquidation proceeding, that duty can be enforced by the liquidator for the indirect benefit of the creditors.[93]  The elements of dishonest assistance exist if a defendant dishonestly assists a fiduciary in committing a breach of their duty.  The defendant's liability is based on the fact of his having been an

---

[86] AD #114; AD #115, pp. 14-20.
[87] AD #1.
[88] AD #115.
[89] AD #1, AD #115, AD #114, AD #120.
[90] AD #1, AD #115, AD #114, AD #120.
[91] *Bank of Credit and Commerce International (Overseas) Ltd. v. Akindele,* [2000] 4 All ER 221.
[92] *Walker v. Wimborne* (1976) 50 ALJR 446, HC (Aus); *Lonrho Ltd v. Shell Petroleum Ltd* [1980] 1 WLR 627 at 634 per Lord Diplock HL.
[93] Gore Brown on Companies, Tab 15[A].

accessory to the fiduciary's wrong.[94]   The cause of action under the Statute of Elizabeth is established by showing that the Defendants transferred assets with the intent to hinder, delay or defraud creditors, and can be established by either proof of actual intent or the badges of fraud.[95] Finally, most of the assets were transferred after the presentation of the winding up petition (November 27, 2996), and any transfer made after the presentation of a winding up petition is void under Nevis law.[96]

## VI.   SUMMARY OF ARGUMENT

The Bankruptcy Court has jurisdiction under 28 U.S.C. §1334 to hear this matter, because it is related to the Chapter 15 case of CIL.  Moreover, many provisions of Chapter 15 allow the Court to adjudicate the claims in the Complaint, namely, sections[97] 1501, 1507, 1509, 1521, 1525 and 1527.

Section 1521 allows the Bankruptcy Court to grant <u>any</u> appropriate relief where necessary to protect the creditors and the debtor as long as that relief does not come from sections 522, 544, 545, 547, 548, 550 or 724(a).  The relief sought by the Appellants in the Complaint is not derived from those provisions.  Moreover, sections 1501, 1507, 1525 and 1527 require the Bankruptcy Court to cooperate to the maximum extent possible with a foreign court or foreign representative and provide the mechanism for doing so.  Sections 1509(b)(1) and (2) allow a foreign representative to sue or be sued in a court in the United States and to apply to any court in the United States for direct relief.  Under the Bankruptcy Court's decision, the only courts that cannot provide this relief to the foreign representatives of a Chapter 15 case are the

---

[94] *Barlow Clowes v Eurotrust* [2005] UKPC 37.
[95] See Karen Gebbia-Penetti, *As Certain as Debt and Taxes:Estate Planning, Asset Protection Trusts and Conflicting State Law*, SC 60 A.L.I –A.B.A. 179, 216 (1998).
[95] *Twynes's Case*, 76 Eng. Rep. 809 (Star Chamber 1601).
[96] Nevis Companies Ordinance 1999, Sections 382 and 384(2).
[97] Unless otherwise noted, all section references pertain to the Bankruptcy Code.

Bankruptcy Courts.  This would be an absurd result given the nature and purposes of Chapter 15, including the express purpose of preventing preferential or fraudulent transfers and the goal of equal treatment of creditors, which is furthered by subjecting all parties, both in Nevis and the United States, to the same avoidance law.   Another defect in the Bankruptcy Court's ruling is that, at its logical conclusion, it means a foreign representative can obtain aid from a U.S. bankruptcy court to avoid wrongful asset transfers made prior to the petition date only if the foreign representative files a Chapter 7 or 11 case, rather than a Chapter 15 case.   In that situation, the U.S. bankruptcy court is not cooperating with, assisting or granting comity to the foreign insolvency court, it is merely permitting a foreign representative to file a Chapter 7 or 11 case.  This is not how Chapter 15 was intended to operate.

The Bankruptcy Court's ruling is also inconsistent with the law and practice under the former Bankruptcy Code section 304, which permitted the use of foreign law in claims brought in connection with section 304 cases, but did not allow a U.S. avoidance action to be brought in such cases.  This is significant because the case law developed under former Section 304 remains applicable.  Chapter 15 was not intended to eliminate or restrict the comity granted to foreign courts under the former section 304, but was intended to expand on that comity.  Moreover, it only makes sense foreign law could be used since it would make all parties dealing with a debtor subject to the same avoidance law.

Finally, a leading commentator on Chapter 15, and the Model Law upon which it is based, has largely for these reasons, recognized that U.S. Chapter 15 bankruptcy courts should preside over actions based in the law of the home court, even if they are similar to the avoidance actions available in a U.S. bankruptcy case.

## VII.   ARGUMENT AND AUTHORITIES

A.   <u>Jurisdiction—28 U.S.C. §1334</u>

Bankruptcy jurisdiction is derived from 28 U.S.C. § 1334, which gives district courts original and exclusive jurisdiction of all cases under title 11 and original, but not exclusive, jurisdiction of all civil proceedings arising under title 11, arising in title 11 or related to title 11.[98] Pursuant to 28 U.S.C. §151 and the Standing Order of Reference in the Southern District of Mississippi, the Bankruptcy Court can exercise the jurisdiction given to the district court in 28 U.S.C. § 1334.

A Chapter 15 case is a case under title 11,[99] thus providing the Bankruptcy Court with jurisdiction over CIL's main Chapter 15 bankruptcy case. The pertinent jurisdictional question is whether the Adversary Proceeding is a civil proceeding that arises under, arises in or is related to that title 11 case. To conclude that there is subject matter jurisdiction over the Complaint, this Court need only conclude that the Adversary Proceeding is a matter that is "related to" the title 11 case.[100] Although neither Title 28 nor Title 11 define the term "related to," there are certain generally accepted definitions that have been used by courts, including the following: (a) there must be some nexus between the civil proceeding and the title 11 case;[101] (b) the outcome of the civil proceeding could conceivably have an effect on the estate being administered in bankruptcy;[102] and (c) the outcome of the civil proceeding could alter the debtor's rights,

---

[98] 28 U.S.C. § 1334(a) and (b).
[99] See *In re Tri-Continental Exch. Ltd.*, 349 B.R. 627, 631 (Bankr. E.D. Cal. 2006).
[100] *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987)(stating that it is not necessary to distinguish between matters that arise in, arise under or related to a case under title 11 when determining bankruptcy jurisdiction, because the three terms conjunctively define the scope of jurisdiction, making it necessary only to determine whether a matter is related to a title case).
[101] *Higgins v. Higgins (In re Pacor)*, 743 F.2d 984, 994 (3rd Cir. 1984) (overruled on other grounds).
[102] *In re Pacor*, 743 F.2d at 994; *In re Wood*, 825 F.2d at 93.

liabilities, options, or freedom of action (either positively or negatively) and the proceeding in anyway impacts upon the handling and administration of the estate.[103]

If the Adversary is "related to" CIL's Chapter 15 case, under any of the definitions cited above, then the Bankruptcy Court has jurisdiction over that proceeding.  There are two reported cases in which courts have found that a bankruptcy court has jurisdiction over a lawsuit that was "related to" a Chapter 15 case.[104]   In the *Toth v. Bodyonics* case, the plaintiff sued Bodyonics and General Nutrition Companies, Inc. ("GNC") in state court.  GNC removed the suit to federal district court under 28 U.S.C. §1334 on the basis that the lawsuit was related to the MuscleTech Research and Development, Inc. ("MuscleTech R & D") Chapter 15 case, because MuscleTech R & D, who was not even a party to the lawsuit, had agreed to indemnify GNC for any liability resulting from the sale or use of MuscleTech R & D's product.[105]  The district court agreed and found there was jurisdiction over the lawsuit under 28 U.S.C. § 1334, because it was related to a Chapter 15 case.[106]  The *Abrams v. GNC* case made a similar decision for the same reason.[107]

The Appellants' Complaint is directly related to CIL's Chapter 15 case and its liquidation proceeding in Nevis.  The subject of the Complaint is damage done to CIL by the Defendants.[108] The outcome of the Complaint will therefore have an effect on CIL's liquidation and the assets available for distribution to its creditors.  Accordingly, the Court should reverse the Bankruptcy Court's Dismissal Orders and conclude that the Bankruptcy Court has jurisdiction over the Complaint pursuant to 28 U.S.C. § 1334.

---

[103] *Barker v. King*, 2008 U.S. Dist. LEXIS 20421, *12 (S.D. W.Va. March 13, 2008).
[104] *Toth v. Bodyonics, Ltd.*, 2007 U.S. Dist. LEXIS 18278 (E.D. Pa. March 15, 2007); *Abrams v. General Nutrition Companies, Inc.*, 2006 U.S. Dist. LEXIS 68574 (D.N.J. September 25, 2006).
[105] *Toth v. Bodyonics, Ltd.*, 2007 U.S. Dist. LEXIS 18278, *5-6 (E.D. Pa. March 15, 2007).
[106] *Id.* at *6-7.
[107] *Abrams v. General Nutrition Companies, Inc.*, 2006 U.S. Dist. LEXIS 68574, *17-18 (D.N.J. September 25, 2006).
[108] AD #115.

**B.**    **Chapter 15: Its Plain Language and Legislative History**

While 28 U.S.C. § 1334 provides jurisdiction, Chapter 15 provides the mechanism for a Bankruptcy Court to preside over a lawsuit related to a Chapter 15 case.

*1.*    ***Section 1521(a)***

Section 1521(a) allows a bankruptcy court to grant "any appropriate relief" to a foreign representative. The relief that can be granted under section 1521(a) includes the power to entrust the realization of all or part of the debtor's assets within the territorial jurisdiction of the United States to the Foreign Representatives and the power to grant any other relief that may be available to a trustee, except that the Court may not grant "relief available under sections 522, 544, 545, 547, 548, 550, and 724(a)."[109]

The specific relief sought by the Appellants in the Complaint is for the Bankruptcy Court to adjudicate CIL's Nevis law causes of action aimed at recovering assets of CIL that were transferred prior to or after the winding up proceeding or the value of such assets plus any appropriate damages.[110] The assets transferred all appear to be located in the United States and, critically, all Defendants are subject to *in personam* jurisdiction in the United States.[111]

To grant this relief under the authority of section 1521, a court must only be satisfied of the following:

(a)    The foreign proceeding has been recognized under the Bankruptcy Code.

(b)    The relief is necessary to effectuate the purposes of Chapter 15.

(c)    The relief is necessary to protect the assets of the debtor or the interests of creditors.

---

[109] 11 U.S.C. § 1521(a)(5) and 1521(a)(7) (emphasis added).

[110] AD #115.

[111] AD #115, pp. 10-12 and 4-6.

(d)    The relief sought does not come from sections 522, 544, 545, 547, 548, 550, and 724(a) of the Bankruptcy Code.[112]

These requirements are all met.  First, the CIL case has been granted recognition by the Bankruptcy Court.[113]

Second, the relief sought by the Appellants is necessary to effectuate the purposes of Chapter 15.  Those purposes are stated in section 1501 of the Bankruptcy Code as follows: (a) to promote cooperation between the courts of the United States and courts in other countries in cross-border insolvencies; (b) to promote greater legal certainty for trade and investment; (c) to promote fair and efficient administration of cross-border insolvencies that protects the interests of all creditors and other entities, including the debtor; (d) protection and maximization of the value of the debtor's assets; and (e) facilitation of the rescue of financially troubles business, protecting investments and preserving employment.[114]  The adjudication of the Complaint in the most efficient forum will protect and maximize the CIL's assets and protect the creditors' interest by preventing the delays and the obfuscation that would undoubtedly result if the Appellants are forced to bring a claim against some of the Defendants here and some on the Defendants in Nevis.  An adjudication of the claims in Bankruptcy Court will also promote cooperation between the Nevis Court and the Bankruptcy Court, because the Bankruptcy Court has the more effective means to assist with the recovery from the Defendants of the assets that need to be administered to the creditors through the Nevis proceeding.  The Bankruptcy Court's adjudication of the causes of action, and inherently a ruling that Chapter 15 courts can apply foreign avoidance law, will also promote greater legal certainty for trade and investment and promote fair and efficient administration of cross-border insolvencies that protects the interests

---

[112] See 11 U.S.C. §1521.
[113] MCD #35.
[114] See 11 U.S.C. §1501.

of all creditors and other entities, including the Debtor, by allowing the Appellants to cut through the "red tape" presented by borders and distance to more quickly and efficiently have the Debtor's claims heard.   A quicker and more efficient process will allow for a greater net recovery to creditors of CIL.  If companies and individuals want to engage in global commerce, with assets, interests and creditors scattered about the world, then they should not be able to use borders and jurisdictions to hide assets, delay judgments and thwart collection efforts.   The evidence located by the Appellants and alleged in the Complaint will show that the Defendants have used such factors to their advantage and should be expected to continue to do same.[115]

Third, the relief sought is also necessary to protect the CIL's assets and the creditors' interests.  The Bankruptcy Court seems to have been persuaded that the lawsuit can just as easily be pursued through the Nevis Courts simply because CGI, Milam and Gymnogyps indicated a willingness to consent to jurisdiction in Nevis.[116]  What the Bankruptcy Court does not appear to have considered is the fact that there are many other Defendants who worked together with CGI and Milam to cause damage to CGI.[117]  All of the Defendants have not stipulated to jurisdiction in Nevis, nor would one expect them, given the cost, to agree to be a party to a lawsuit pending in a small, remote island.  The effect of the Bankruptcy Court's ruling will be delay and possibly multiple trials over the same issues, which only serves the interests of the Defendants and others who have attempted to put CIL's assets outside the reach of its creditors.   In contrast, the Bankruptcy Court can exercise jurisdiction over all the Defendants either because they are U.S. citizens or entities or because of their significant contacts in the U.S.[118]  Likewise, the Nevis Court could not compel additional discovery necessary to complete these actions or compel

---

[115] AD #115, pp. 9, 10 and 12.

[116] AD #157, pp. 6-7; AD #168, pp. 24-25.

[117] AD #115.

[118] AD #115, pp. 4-6.

attendance of witnesses at trial, because the witnesses and evidence are all in the United States. The inability to compel the attendance of witnesses, and the increased expense to any witnesses who would otherwise appear voluntarily in Mississippi or who might be willing to travel to Nevis, are significant factors. CIL here is attempting to recover assets transferred from it, and thus anticipates most witnesses with knowledge will be hostile to its cause as they will likely be the recipients or architects of the transfers. The Bankruptcy Court could, on the other hand, compel discovery needed for trial, which would also avoid expense and inconvenience to witnesses and the debtor.[119]  In short, the Bankruptcy Court provides the fastest, most efficient, and best forum in which all of the claims related to the looting of CIL can be fairly litigated. This is a sufficient showing of necessity for purposes of section 1521(a).

Fourth, the plain language of section 1521(a)(7) only precludes the granting of "relief available under sections 522, 544, 545, 547, 548, and 724(a)."[120] The Court should interpret any statute, including Section 1521(a)(7), according to its plain language.[121]  The Appellants have not asked for any relief under sections 522, 545, 547, 548 or 724(a); rather, they have alleged claims based on Nevis law. Moreover, the Appellants do not need to use section 544 to obtain standing to pursue the Nevis law causes of action. Section 544 (b) allows a trustee or debtor-in-possession the right to avoid any transfer of the debtor that is voidable under applicable law by a creditor holding an unsecured claim.[122]  Under U.S. bankruptcy law, a trustee or debtor-in-possession acquires, through section 544, standing to bring an action otherwise held only by a

---

[119] 11 U.S.C. § 1521(a)(4).  MCD #35.
[120] 11 U.S.C. §1521(a)(7).
[121] *United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989) (holding that where the statutes' language is plain, the court's only function is to enforce the statute according to its terms).
[122] 11 U.S.C. §544(b); *Grochinski v. Knippen (In re Knippen)*, 355 B.R. 710, 731 (Bankr. N.D. Ill. 2006) (noting that 544(b) provides the trustee with the rights of an unsecured creditor to avoid transactions that can be avoided by the creditor under state law).

**APPELLANT'S BRIEF**                                           - 26 -
DALDMS/649490.1

creditor.[123]   The Appellants are not seeking to stand in the shoes of a creditor, nor are they seeking to pursue a creditor's avoidance cause of action under state law or other applicable law through use of section 544.  The Nevis law causes of action brought by the Appellants are causes of action that belong to CIL under Nevis law, not to CIL's creditors.[124]   The Winding Up Order and section 398(1)(a) of the Nevis Companies Ordinance 1999 allow the Foreign Representatives to pursue CIL's causes of action.[125]

Contrary to the Bankruptcy Court's ruling,[126] and CGI's argument below,[127] Chapter 15 does not preclude the consideration of any claim that *looks like* an avoidance claim under U.S. law or that has a similar effect.  Notably, section 1521(a)(7) does not preclude use of "avoidance actions;" rather, it specifically precludes the use of certain, specific, U.S. bankruptcy law avoidance provisions—sections 522, 544, 545, 547, 548, 550 and 724(a).[128]   Moreover, Chapter 15 specifically incorporates Section 549, which is used to recover post-petition transfers.[129]

The reason for the limitations in section 1521(a)(7) is not, as the Bankruptcy Court concluded, to prevent foreign representatives from recovering in a Chapter 15 any assets of the debtor that were conveyed prior to the bankruptcy or insolvency.[130]   Section 1521(a)(7) prevents the use of Sections 522, 544, 545, 547, 548, 550 and 724(a) in a Chapter 15 case, and section 1523(a) grants a foreign representative standing "in a case concerning the debtor pending under another Chapter of this title to initiate actions under sections 522, 544, 545, 547, 548, 550, and 724(a)."

---

[123] *Id.*
[124] AD #114, AD #120.
[125] *Id.*
[126] AD #157, p. 5.
[127] AD #168, pp. 11-13.
[128] 11 U.S.C. §1521(a)(7).
[129] 11 U.S.C. § 1520(a).  As discussed above, there are many post-petition transfers alleged in the Complaint.
[130] AD #157, p. 6.

The effect of these two provisions is only to prevent a foreign representative from using U.S. bankruptcy avoidance actions in a Chapter 15 ancillary case. The intentions behind sections 1521(a)(7) and 1523(a) can be seen by examining the case law that existed at the time of Chapter 15's enactment, and by looking at the source of Sections 1521 and 1523 in the Model Law and the modification made to the Model Law by Congress.

At the time the Model Law was being formulated and at the time Congress adopted it as part of Chapter 15, there was some uncertainty about choice of law issues related to use of avoidance laws in cross-border insolvencies, but the trend was to allow the use of the foreign avoidance law.[131]

To the extent such laws vary there may be an unfair benefit to a debtor resulting from the ability to choose which law is more favorable. Although several courts, like the *Metzeler, Tarricone,* and *Kojima* courts, discussed in more detail below, had held that a foreign representative could use the avoidance laws of the state where the foreign proceeding was pending but not U.S. laws, some courts struggled with the choice of law. In *Metzeler*, the court noted that allowing foreign representatives to use U.S. bankruptcy avoidance law could provide them with a better result than would be available under there own law, and noted that if Congress had intended that, it would have expressly allowed such action.[132]

Likewise, the creditors of one country being subject to different standards for preferential transfers, and thus using U.S. law or U.S. parties and foreign law of foreign parties would not promote the goal of treating creditors fairly. In the *Maxwell* case, the court struggled with

---

[131] *See, In re Metzeler*, 78 B.R. 674, 678 (Bankr. S.D.N.Y. 1987); *In re Tarricone*, 80 B.R. 21, 23-24 (Bankr. S.D.N.Y. 1988); *In re Maxwell Comm. Corp.*, 170 B.R. 800 (Bankr. S.D.N.Y. 1994); *In re Hideki Kojima*, 177 B.R. 696, 702 n. 35 (Bankr. D. Co. 1995)(noting the change from allowing use of U.S. bankruptcy avoidance law in section 304 cases to use of foreign avoidance law); Lee, Paul L., *Ancillary Proceedings Under Section 304 and Proposed Chapter 15 of the Bankruptcy Code*, 76 AM. BANKR. L.J. 115, 149-158 (2002)(explaining the trend toward allowing courts to apply foreign avoidance law but not U.S. bankruptcy avoidance law and noting conflicting considerations).
[132] *In re Metzeler*, 78 B.R. 674, 677 (Bankr. S.D.N.Y. 1987).

whether to allow the use of the preferential transfer statute, Section 547.[133]  That case involved a U.S. Chapter 11 case and the English equivalent.[134]  The court had to decide whether the estates could bring an action under U.S. preference law or under English preference law.  The elements of the two actions were different.  The court analyzed principles of comity and extraterritoriality, but ultimately decided that the center of gravity was England and decided that English law applied.[135]

It was in this environment with the trend being to permit use of foreign law, but not U.S. law that the Model Law was crafted and the U.S adopted it in the form of Chapter 15.[136]  As described below, the Model Law did not address the choice of law issues that were problematic in U.S. cross border insolvency decisions. The U.S. adaptation, Chapter 15, reflects Congress's preference for the resolution of the choice of law issues as follows: (1) U.S. avoidance actions are not available to foreign representatives in a Chapter 15 case, but actions based on the law of the home country are available and can be adjudicated by a U.S. Chapter 15 bankruptcy court, and (2) foreign representatives who file Chapter 7 or 11 cases have standing to use U.S. bankruptcy avoidance law.

Section 1521(a)(7) is derived from Article 21(1)(g) of the Model Law.  Article 21(1)(g) says as follows:

> where necessary to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief, including: ... granting any additional relief that may be available to *[insert the title of a person or body administering a reorganization or liquidation under the law of the enacting State]* under the laws of the State.

---

[133] *In re Maxwell Comm. Corp.*, 170 B.R. 800 (Bankr. S.D.N.Y. 1994).
[134] *Id.* at 802.
[135] *Id.* at 814.
[136] Supra, note 131.

Congress modified some of that language in the U.S. enactment of the Model law to exclude relief available under sections 522, 544, 545, 547, 548, 550 and 724(a) of the U.S. Bankruptcy Code.

Section 1523 is derived from Article 23 of the Model Law, which states as follows:

> the foreign representative has standing to initiate *[refer to the types of actions to avoid or otherwise render ineffective acts detrimental to creditors that are available in this State to a person or body administering a reorganization or liquidation]*.

Congress also changed this article to limit a foreign representative's standing with respect to sections 522, 544, 545, 547, 548, 550 and 724(a) to a case involving the foreign debtor filed under another Chapter of the Bankruptcy Code.

The U.S. legislative history of section 1521 is not very illuminating, but the legislative history of section 1523 explains the reasons for the above described deviations from the Model Law.

> [Article 23] confers standing on a recognized foreign representative to assert an avoidance action but only in a pending case under another Chapter of this title....This limitation reflects concerns raised by the United States delegation during the UNCITRAL debates that a simple grant of standing to bring avoidance actions neglects to address very difficult choice of law and forum issues.[137]

Congress's changes reflect and are consistent with the practice existing under section 304 at the time of the enactment of Chapter 15 and reflect a concern that a foreign representative should not be able to use U.S. bankruptcy avoidance powers in a Chapter 15 case without first filing a Chapter 11 or 7 and a concern that confusion over choice of law, such as the choice of law issues in the *Metzeler*, *Tarricone*, *Kojima* and *Maxwell* cases (cited and discussed herein) do not continue to arise in Chapter 15.  Sections 1521(a)(7) and 1523 are directed to ensuring application of the appropriate law as between the Chapter 15 court and the court of the foreign

---

[137] H.R. Rep. No. 109-31, 109th Cong., 1st Sess. 106, Section 1523 (2005).

main proceeding. They are not intended to prevent (and don't prevent) a foreign representative from pursuing causes of action owned by the debtor or the estate under the laws of the home court. This makes sense because of a Chapter 15 court's supportive role vis-à-vis the home court or main proceeding. "[T]he whole purpose of avoiding powers...is to redistribute the debtor's assets according to certain statutory priorities."[138]   Considering this link between avoidance and priorities, for there to be a fair and efficient administration that maximizes the estate, the foreign main proceeding's avoidance law should control since it will be the proceeding distributing the assets under its priority scheme.[139]   Otherwise, local creditors in one country could receive more to the detriment of creditors located elsewhere because of varying avoidance laws.[140]

### 2.  *Cooperation Provisions*

Sections 1525(a) and 1527(3) and (5) provide that a "court shall cooperate to the maximum extent possible with a foreign court or a foreign representative," including by "coordination of the administration and supervision of the debtor's assets and affairs" and "coordination of concurrent proceedings regarding the same debtor."[141]  These provisions are instructive and weigh in favor of this Court adjudicating the claims in this adversary proceeding.

Moreover, section 1507 allows a Court, subject to any <u>specific</u> limitations in Chapter 15, to provide additional assistance to a foreign representative under title 11 or any other U.S. law.[142] The Appellants are asking for additional assistance under title 11, namely Sections 1521 (i.e.

---

[138] Jay Lawrence Westbrook, *Avoidance of Pre-Bankruptcy Transactions in Multinational Cases*, 42 TEX. INT'L L.J. 899, 903 (2007) [hereinafter *Multinational Avoidance*].

[139] *Id.*

[140] *Id.; See generally,* Jay Lawrence Westbrook, *Choice of Avoidance Law in Global Insolvencies*, 17 BROOK. J. INT'L L. 499 (1991) [hereinafter *Global Avoidance*].

[141] 11 U.S.C. §§ 1525(a); 1527(3) and (5).

[142] See 11 U.S.C. §1507(a).

relief necessary to protect creditors' interests and the debtor's assets) and 1509 (i.e. direct access to U.S. courts).

The U.S. version of the Model Law adds some factors to consider before granting such additional assistance.[143]  Specifically, the relief must be consistent with the principles of comity, must reasonably assure just treatment of all creditors, must protect creditors in the U.S. from prejudice and inconvenience in the claim processing in the foreign court, **must prevent preferential or fraudulent transfers of the debtor's property** and must assure fair distribution of proceeds.[144]

The Bankruptcy Court could adjudicate the Nevis causes of action under the plain language of section 1507.  Indeed, it is difficult to see how a Chapter 15 court could prevent preferential or fraudulent transfers absent the ability to invoke the foreign law since it clearly cannot use the U.S. Bankruptcy Code statutes to avoid such transfers.  The additional assistance sought is not specifically limited by Chapter 15 as discussed above.  And, the additional assistance sought is available under title 11.  Specifically, section 1509, which is part of title 11, allows the Foreign Representatives direct access to U.S. courts,[145] and section 1521(a) allows relief necessary to further the purposes of Chapter 15 that are necessary to protect creditor's interests and the debtor's assets.[146]  For many of the reasons stated above in connection with the section 1521 discussion, the relief requested meets the other requirements of section 1507(b).[147]

Additionally, the U.S. legislative history for section 1507 says that:

> [Section 1507(b)] "makes the authority for additional relief
> (beyond that permitted by sections 1519-1521...) subject to the

---

[143] See 11 U.S.C. §1507(b).

[144] *Id.*

[145] 11 U.S.C. §1509(b)(1)-(3).

[146] 11. U.S.C. § 1521(a).

[147] That is, just treatment of creditors, protection of U.S. creditors, prevention of fraudulent transfers and preferential transfers, and distribution of proceeds substantially in accordance with title 11.

conditions for relief heretofore specified in United States law under section 304, which is repealed. This section is intended to permit the further development of international cooperation begun under section 304, **but is not to be the basis for denying or limiting relief otherwise available under this Chapter**. The additional assistance is made conditional upon the court's consideration of the factors set forth in the current subsection 304(c) in the context of a reasonable balancing of interests following current case law."[148]

One of the factors set forth in Section 1507(b) that was also a factor under the former Section 304(c) is the prevention of preferential or fraudulent dispositions of property of the debtor. This shows that Congress contemplated that the courts would be able to provide additional assistance similar to that under the former section 304. As discussed further below, there is precedent in section 304 cases for a U.S. bankruptcy court to try a case based on the home court's law—even avoidance type law.

## C.    Decisions Made Under the Former Section 304 Are Applicable

Chapter 15 was meant to increase cooperation and comity between the United States and courts in other jurisdictions and to expand on the progress made in that regard under the former Section 304. Judge Drain, in *In re Sphinx, Ltd.*, wrote that "[a]lthough Chapter 15 replaced section 304 of the Bankruptcy Code…Chapter 15 maintains–and in some respects enhances—the 'maximum flexibility,' that section 304 provided bankruptcy courts in handling ancillary cases in light of principles of international comity and respect for the laws and judgments of other nations."[149]    To an even greater degree than section 304, the Model Law and Chapter 15 represent a step toward the universality approach in which "a primary insolvency proceeding is instituted in the debtor's domiciliary country, and ancillary courts in other jurisdictions—typically in jurisdictions where the debtor has assets—defer to the foreign proceeding and in

---

[148] H.R. Rep No. 109-31, 109th Cong., 1st Sess. 106, Section 1507 (2005)(emphasis added).

[149] *In re SPhinX, Ltd.*, 351 B.R. 103, 112 (Bankr. S.D.N.Y. 2006) (internal citations omitted).

effect collaborate to facilitate the centralized liquidation of the debtor's estate according to the rules of the home country."[150]

Chapter 15 has provided a procedural mechanism for cooperation between courts, but does not change the basic approach of U.S. law, which has long honored principles of comity.[151] On this issue, Professor Westbrook, wrote:

> Because § 304 has been repealed, the case law developed under that section is not directly controlling in Chapter 15 cases, but it remains relevant to a limited extent. Although Chapter 15 was meant to be generally consistent with existing United States law, it does have provisions both more and less favorable to cooperation than the § 304 case law. It's drafters were anxious to adopt those approaches in Chapter 15 that are more cooperation-friendly than existing United States law, but did not want to lose the benefits of § 304 case law that might be more advanced in the cooperative direction. Section 1507 reflects that intent. It adds back to the Model Law some language that is a virtual copy of § 304, while limiting its applicability to providing 'additional assistance.' Thus the § 304 language and prior case law apply only where they enable the court to go beyond chapter 15 in cooperating with the foreign court. Prior law does not apply where it limits relief under Chapter 15. On the other hand, the additional assistance offered by § 1507 is available only if the preexisting § 304(c) criteria are satisfied.[152]

Under the former Section 304, U.S. bankruptcy courts assisted foreign courts by presiding over actions brought by foreign representatives to avoid transfers or to recover under the laws of the foreign jurisdiction. Given the lack of contrary Chapter 15 cases on the issue and the plain language of Chapter 15 discussed above, a bankruptcy court can and should apply the jurisprudence developed under the former Section 304 case law as long as it is not inconsistent with section Chapter 15,[153] and should preside over an action by a foreign representative to recover assets under the law of the home court. That is not prohibited by Chapter 15, and several

---

[150] Jay Lawrence Westbrook, *Chapter 15 at Last*, 79 AM. BANKR. 713, 716 2005 ("Chapter 15...represents an embrace of universalism by the United States...."). See also, *In re Treco*, 240 F.3d 148, 153-154 (2nd Cir. 2001).
[151] *Iida v. Kitahara (In re: Iida)*, 377 B.R. 243, 256 (B.A.P. 9th Cir. 2007).
[152] Jay Lawrence Westbrook, *Chapter 15 at Last*, 79 AM. BANKR. 713, 720 2005 (internal citations omitted, emphasis added).
[153] *See* H.R. REP. NO. 190-31, 109th Cong., 1st Sess. 106 at n. 117 (2005). See generally, *Multinational Avoidance* at 902; *In re French*, 440 F.3d 145 (4th Cir. 2006); *In re Metzler*, 78 B.R. 674, 677 (Bankr. S.D.N.Y. 1987).

Section 304 cases dealt with a foreign representative's ability to bring avoidance-type actions and the body of that should apply.

The *Metzeler* court found that "[a] foreign representative may assert, under § 304, only those avoiding powers vested in him by the law applicable to the foreign state."[154] "The section 304 court's tasks should be to assist implementation of the foreign court's decrees...not to provide the foreign representative with the benefit of American avoidance powers, which may be better (from a debtor's perspective) than those available in the foreign court."[155] The *Tarricone* court affirmed *Metzeler's* position that a foreign representative may not invoke American avoidance law.[156]

In the *Metzeler* case, a West German trustee commenced an ancillary case in the United States under section 304 to pursue alleged preferential transfers and fraudulent conveyances to a US-based entity.[157] The transfers were made by wire from a West German bank to the US-based entity's account in New York.[158] The West German trustee was recognized as a foreign representative from a foreign proceeding (which would have been defined as a foreign main proceeding under Chapter 15).[159] Noting that an ancillary administration is designed to "afford comity" to the foreign court of primary administration, the court held that the American avoidance law was unavailable to foreign representative.[160] But the court specifically found that "a foreign representative may assert...those avoiding powers vested in him by the law applicable to the foreign estate" and that "foreign representatives may bring a...petition [in an ancillary proceeding] for the purpose of bringing preference and fraudulent transfer actions based on

---

[154] *Metzeler*, 78 B.R. at 678.
[155] *In re Metzeler*, 78 B.R. at 678 (quoting R.A. Gitlin and E.D. Flaschen, *The International Void in the Law of Multinational Bankruptcies*, 42 BUS. LAWYER 307, 319 (1987)).
[156] 80 B.R. at 23-24.
[157] 78 B.R. 674, 675 (Bankr. S.D.N.Y. 1987).
[158] *In re Metzeler*, 78 B.R. at 675.
[159] *Id.* at 675-676.
[160] *Id.* at 677.

foreign law to recover property located here [in the United States]."[161]  Likewise, the *Tarricone* court found that a foreign representative could only rely "on foreign substantive law to recover property located in this country."[162]  The courts applied the substantive law of the state in which the foreign proceeding was pending.[163]

In the *Kojima* case, the bankruptcy court, following *Metzeler*, allowed the foreign representative of a Japanese bankruptcy estate to institute a Section 304 proceeding for the purpose of, among other things, pursuing an avoidance action in the U.S. based on Japanese avoidance law. [164]  In that case, prior to filing its Japanese bankruptcy proceeding, a Japanese company transferred a golf course located in the U.S. to another Japanese company.  The trustee of the transferor sought to recover the asset in the context of a Section 304 proceeding. [165]  That court held that the former section 304(c) allowed not just actions to prevent future conveyances, but also actions to recover property for a foreign bankruptcy estate and held that the dispute should be heard in a U.S. court.[166]

Very similar to the facts in the *Metzeler, Tarricone,* and *Kojima* cases, this Court has recognized the Nevis court as the foreign main proceeding since it sits in the country in which CIL has its center of main interests.  Therefore, under the reasoning of *Metzeler*, *Tarricone*, and *Kojima,* Nevis law applies to the transfers in this case.

---

[161] Id. at 679.
[162] 80 B.R. 21, 23-24 (Bankr. S.D.N.Y. 1988).
[163] *In re Metzeler*, 78 B.R. 674, 678 (Bankr. S.D.N.Y. 1987), *In re Tarricone*, 80 B.R. 21, 23-24 (Bankr. S.D.N.Y. 1988); *see* Jeremy V. Richards, *Application of Avoidance Laws to Cross-Border Transactions—A Patchwork Quilt of Confusion*, 5 INT'L INSOL. REV. 109, 117 (1996).
[164] *In re Hideki Kojima*, 177 B.R. 696, 702 (Bankr. D. Co. 1995).
[165] *Id.* 698-699.
[166] *Id.* at 702.

Professor Westbrook has opined that Chapter 15 court's "should apply the avoidance law of the debtor's home country."[167] Although this issue has not been directly decided in a Chapter 15 case, the conclusion is supported by the *Loy* case, which is a Chapter 15 case.[168]

In the *Loy* case, the foreign representative filed a motion to sell assets under section 363 of the Bankruptcy Code.[169] Other parties claimed to have an interest in the property by virtue of certain deeds that were executed after the English insolvency began and right around the time the Chapter 15 case was filed.[170] The Chapter 15 representative sought a declaration, in the context of the motion, that the deeds were void under section 549 or English law.[171] The *Loy* court held that the relief sought by the trustee could not be brought by motion, but, pursuant to Bankruptcy Rule 7001(a), must be brought in an adversary proceeding, and for <u>that</u> reason denied the relief sought.[172] The *Loy* court went on to offer some alternatives for the trustee. The first was to file an adversary to recover the transfers under Section 549 of the Bankruptcy Code, but the court noted the following problem with that option.[173] Section 1521(a)(7) excludes relief under section 550,[174] and, since section 550 is necessary to actually recover a transfer that is voided under section 549, the court noted that the trustee might not be successful if it brought an action under section 549. Second, the court suggested the alternative of using English law to recover the property, but noted that an adversary proceeding would be required and that such a proceeding would fit squarely within Bankruptcy Rule 7001.[175] The *Loy* court did not hold or opine that the

---

[167] See generally, *Multinational Avoidance* at 902; *In re French*, 440 F.3d 145 (4th Cir. 2006); *In re Metzler*, 78 B.R. 674, 677 (Bankr. S.D.N.Y. 1987).
[168] *In re Loy*, 2008 Bankr. LEXIS 1038, *24-25 (Bankr. E.D. Va. 2008).
[169] *Id.* at *2-5.
[170] *Id.*
[171] *Id.* at *17.
[172] *In re Loy*, 2008 Bankr. LEXIS 1038, *18, *19, *26 (Bankr. E.D. Va. 2008).
[173] *Id.* at *22-23.
[174] *Id.*
[175] *Id.* at *23-26.

use of foreign law was prohibited by section 1521(a)(7), presumably because such actions are not an attempt to exercise powers under sections 522, 544, 547, 548, 550 and 724(a).

By virtue of the opinions discussed above, a bankruptcy court may grant relief in the form of hearing an avoidance action pursuant to a main proceeding's laws. This was the case before and after Chapter 15. The case law prior to Chapter 15 explicitly held that bankruptcy courts had this authority. According to Congress, this case law is applicable in post-Chapter 15 cases to define the relief available under section 1507. The Bankruptcy Court's holding impermissibly denied the relief that these cases plainly made available. Moreover, Chapter 15 was meant to increase the ability of bankruptcy courts to exercise cooperation and comity. The Bankruptcy Court's decision goes against this central purpose by finding that the language of Chapter 15 eliminates tools necessary for cooperation that were previously available.

**D.    Commentator Views**

Applying the foreign main proceeding's law, including its avoidance law, in Chapter 15 cases also conforms to Chapter 15's universalist background and purposes of facilitating cooperation, legal certainty for trade and investment, fair and efficient administration, and maximization of the estate.  The rule provides for greater legal certainty since "[n]o other rule can be [as] predictable and transparent in its application."[176]  "If every creditor knows in advance that the debtor's home country avoidance rules will be applied to all prebankruptcy transactions, the costs and risks of credit extension under various circumstances will be far more predictable than they are today."[177]

Professor Jay Lawrence Westbrook ("Westbrook") assisted with drafting the Model Law and assisted the Department of State and Congress in drafting Chapter 15.[178]  Accordingly, Westbrook is a leading commentator on Chapter 15 and has specifically envisioned, based on both the interpretation of the law and his experience, the ability of a foreign representative to file actions, such as those at issue here and including avoidance actions pursuant to the foreign main proceeding's law, in a Chapter 15 ancillary proceeding:

> When a multinational enters bankruptcy proceedings in its home country, it will nearly always have engaged in prebankruptcy transaction having substantial contacts with two or more nations.  Every other party to each of those transactions may be a defendant in an avoidance action brought by the Trustee in Bankruptcy (TIB) in an "avoiding" court, which is a court in a nation that is not the home country of the multinational, but which has substantial contacts with the transaction and has jurisdiction over an avoidance defendant.  The avoiding court must choose which avoidance law to apply....(1) local (avoiding court) law; or (2) home-country (domiciliary) law.

* * *

---

[176] See generally, *Global Avoidance*; *Multinational Avoidance*.

[177] *Global Avoidance* at 529; *Multinational Avoidance* at 902-903.

[178] *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, fn. 3 (Bankr. S.D.N.Y. 2007).

> The most important single variable in this choice of avoidance law should be the identity of the "distributing" court, which is the court that will determine the distribution of the proceeds of a successful avoidance action. As a general rule, the avoiding court should apply its own law if it will distribute the proceeds, but should apply the home-country avoiding law if it will turn over the proceeds to the home country court for distribution.[179]

This passage clearly contemplates that a Chapter 15 court should preside over actions to recover the debtor's property. To parallel Professor Westbrook's reasoning, the Bankruptcy Court should be the "avoiding" court since it is a court in a nation that is not CIL's home country, but is the court that has substantial contacts with the transfers and has jurisdiction over the defendants. And as the "avoiding" court in a Chapter 15 case, the Bankruptcy Court should apply the law of the distributing court, Nevis, to the transfers.

## VIII.  CONCLUSION

For the foregoing reasons, Appellants respectfully requests that this Court reverse the Bankruptcy Court's Dismissal orders, conclude that the Bankruptcy Court has subject matter jurisdiction over the Appellants' Complaint and can preside over the Nevis law causes of action, and grant such other and further relief to which Appellants may be justly entitled.

---

[179] *Global Avoidance* at 499.

**APPELLANT'S BRIEF**
DALDMS/649490.1

- 40 -

Dated: October 17, 2008
     Dallas, Texas

**BAKER & McKENZIE LLP**


/s/ David W. Parham
David W. Parham
Texas State Bar No. 15459500
Laurie D. Babich
Texas State Bar No. 00796150
2001 Ross Avenue
2300 Trammell Crow Center
Dallas, Texas  75201
Telephone:  (214) 978-3000
Facsimile:  (214) 978-3099
**ATTORNEYS FOR APPELLANTS**


**-and-**

**BYRD & WISER**

/s/ Nicholas Van Wiser
Nicholas Van Wiser
State Bar No. 7339
145 Main Street
Biloxi, MS  39530-4333
Telephone:  (228) 432-8123
Facsimile:  (228) 432-7029
**LOCAL COUNSEL FOR APPELLANTS**

## CERTIFICATE OF SERVICE

This is to certify that the undersigned personally caused a true and correct copy of the foregoing Appellants' Brief to be served on the following:

**Condor Guaranty, Inc**          Represented by    **Jeffrey Ryan Barber**
                                                    Watkins, Ludlam, Winter & Stennis, P.A.
                                                    P.O. Box 427
                                                    Jackson, MS 39205-0427
                                                    Telephone:  601 949-4765
                                                    Fax : 601-949-4804
                                                    Email: jbarber@watkinsludlam.com

**Gymnogyps Management, Inc.**    Represented by    **Jeffrey Ryan Barber**
                                                    (See above for address)

**Harvey Milam**                  Represented by    **Jeffrey Ryan Barber**
                                                    (See above for address)

**Ross N. Fuller**
c/o Stockton Fuller & Company, Inc.
3200 West End Ave., Suite 500
Nashville, TN 37203
**Pro Se**

The following persons or entities below are pro se and are defendants in the action that either did not respond to the Appellants' complaint or had their responses stricken by the Bankruptcy Court:

**Petroquest Resources, Inc.**
One Arlington Center
1112 East Copeland Road
Suite 420
Arlington, TX 76011
-and-
c/o Laughlin Associates, Inc.
2533 North Carson St.
Carson City, NV 89706

**APPELLANT'S BRIEF**                    - 42 -

**Byron Tyghe Williams**
7345 Salida Road
Mentor on the Lake, OH 44060
-and-
P.O. Box 88
Mentor, OH  44060


**Finpac Holdings, Inc.**
c/o C. Thomas Burton, Jr.
50 W. Liberty Street, Suite 700
Reno, NV 89501
-and-
Attn: Kevin Jackson
2415 E. Camelback Road
Suite 700
Phoenix, AZ 85016


**Intercontinental Development and
Investment Corporation**
One Arlington Center
1112 East Copeland Road
Suite 420
Arlington, TX 76011
-and-
c/o Laughlin Associates, Inc.
2533 North Carson St.
Carson City, NV 89706

**T. Alan Owen**
One Arlington Center
1112 East Copeland Road
Suite 420
Arlington, TX 76011

by depositing the same in the United States mail, first-class postage prepaid and properly addressed, on the 17th day of October 2008.


/s/ Laurie D. Babich
_____